Case number 17-5154. In Reed, Trade and Commerce Bank, by and through liquidators Eleanor Fisher and Tammy Fluh petitioner. Mr. Reed for the petitioner, Mr. Olstec for the respondent. Mr. Reed, may it please the court. Bill Reed for the liquidators. We're here today, your honors, to address whether or not the district court has violated the mandate issued by the Second Circuit in the opinion issued in March of 2014, just over four years ago. I would suggest to the court that the position taken by the Department of Justice, who is the interpleader plaintiff in this case, cannot stand in, it cannot satisfy the mandate for two reasons. A temporal reason and a substantive reason. The temporal reason is that the court said that there was going to be a reasonable time given, not to the U.S. government, but to Brazil, which it represented it could comply with, to get a 2467 enforcement order. The government's contention and the district court below accepted the notion that a 2467 D3 protective order satisfied that condition, even though that doesn't give anyone a right to property. That is the substantive component of the violation of the mandate. Keep in mind. You're putting a lot of weight on the Second Circuit's use of the word enforcement in the context where the court's whole point was that the 2467 issue was not before them. So why should we parse that opinion as if it were a statute and try to make these fine judgments about an issue that wasn't before them? So the issue before the court in the interpleader action and before this court on Vandamus is ultimately the res. It was in custodial legis, in the court's custody. And so the determination of who would ultimately receive custody of the res, in this case the money, had to be determined. And the court said, we want this determined in a reasonable period of time. And so in order for that determination to go forward. The court said that the penal law rule didn't resolve the case. Correct. And it sent it back for 2467 issues to be worked out. And if the Second Circuit had never issued the mandate, it would have been very easy for Brazil to get a D3 order, right? One had already been issued for the five years preceding the interpleader. The court was well aware of the history. And it said you have a reasonable period of time to get an execution order. So if the court was said, or get a D3 order and stay this thing until in terminum, then why would it have used the words reasonable period of time? And why would it have said that? Reasonable period of time to start a 2467 proceeding. 2467 is titled enforcement. Ultimately, Your Honor, if the court comes down, the court is entitled to interpret it that way. But the way that I read Mandamus case law is that when there is an alleged violation of the mandate, it is the next appellate court's job to interpret the prior decision, both as to its spirit and as to its letter. And so when you look at the context of this case, this case has been in three circuit courts. This is the third. The Third Circuit told the government to give the money back. The Second Circuit said Brazil has a reasonable period of time to get an execution order. Brazil isn't even here. So we have a very awkward procedural setting. When have you or this court ever seen an interpleader plaintiff still advocating for where the money should go in an interpleader? What the government said in 2010 is you, the court, ought to sort this out. So you're saying that the Second Circuit barred resort to D3? I do. What would be the legal basis for the Second Circuit saying that? The legal basis was that the government is, in essence, a stop to the procedure that it instituted, which is this interpleader. So if the government was going to say to the court, you, court, determine who owns this money, then it doesn't get to continue to advocate in the interpleader, which, by the way, Brazil isn't even represented, one of the bases for which we believe that their answer should be stricken and release should be granted. But to the extent that we were in an interpleader in which the money was at issue and the ownership, the court said, determine the ownership. The avenue to do this is 2467 execution order. Keep in mind, Your Honor, that the summary judgment that was entered by the Southern District of New York in 2012 was entered on the notion that there was already a final judgment from Brazil. That was a representation made by both Brazil and the Department of Justice. On that basis, Judge Grasse granted summary judgment. When we got to the Second Circuit, they said, oh, wait a minute, it's not quite final. It was final enough to seek and obtain summary judgment, but it wasn't final enough for 2467. So the... It was final in the sense that we would describe a judgment pending on appeal. Your Honor, they moved for summary judgment in an inappropriate proceeding, which the Second Circuit ultimately determined to be the case. They said interpleader isn't the right method in and of itself to determine ownership of the funds. And so what they said is, look, you got one chance to do this within a reasonable period of time. No one is disputing that four years plus is not a reasonable period of time. So what they did on the eve of the determination of what that reasonable time was, which was November 3rd, 2014, that's what Judge Forrest told Brazil. On the eve of that, ex parte, they went to a different circuit in a different district and pushed pause for literally the third time. They're playing a legal shell game with the various federal courts in which they've been in front of, and this short court should not countenance that. If, as a private litigant, I went to a different circuit and sought ex parte relief, I'm confident that would not go well for me. Yet the government has done that time and again. In 2004, the District of New Jersey ordered them to return the funds to Keston and said there is no finding of alter ego, you haven't established it. They pushed pause for the first time. And then they went to the interpleader action, which interpleader law is very clear that the determination of the ownership of the funds is determined on the day the interpleader is filed. 2010, we're here eight years later, we are a judgment creditor, we're entitled to finality. We're asking that their pleadings be struck, that is Brazil's, who isn't here, not even representing itself, and that we proceed to judgment in the interpleader. Thank you. Good morning, your honors. It pleases the court. Along with Jennifer Wallace, I represent the United States. My name is Michael Homestead. I'd like to pick up really where we just left off. It is incorrect to suggest that Brazil had said to the district court that they had a final enforceable order. The district court's decision granting summary judgment to Brazil specifically says Brazil does not seek immediate release of the Venus funds to the Brazilian government. Rather, Brazil seeks to transfer the transfer of the funds to the Sao Paulo court, where the money will be held pending the adjudication of the purist defendant's appeals. That's the district court decision. The circuit court completely understood that. If you look at page 10 of the circuit court decision, the circuit court says that they of the appeal. So everyone knew that there was not a final enforceable order. There was a final judgment, which frankly translates best to meaning a final verdict. You can't bring a 2467 action until the appeal is exhausted, though. You could not under the original 2467. If we had had a final order, we wouldn't have had to dismiss after the Tiger Eye case. But we did have to dismiss after the Tiger Eye case because there wasn't a final enforceable order. And then Congress amended it. And then Congress amended it, so now we can do, under the D3, we can do it based on a restraining order. The fact is, though, in this case, we sought to enforce the Brazilian restraining order so that if you want to be technical about the term enforcement, we actually did an enforcement action, but it is, I don't want to rely on that because substantively what we've done is we have done a preliminary restraint on this money pending the delivery of a final order certified that would be made. I'm just curious. So Tiger Eye was repealed by statute in 2010. Correct. And the Second Circuit decision was some years later. Correct. It seems to me at any point from 2010 going forward, you could have gone, you could have filed a D3 because the law had been changed and you had a clear right to get a preservation order at that point. We could have. So why did we go all the way to the Second Circuit on this revenue, sorry, penal law that just didn't have any significance going forward? Well, I wasn't there, so I can't say. I can tell you why I wouldn't have gone forward, and that is because it would be duplicative because we believed that all of the issues would be resolved in the interpreter until the Second Circuit told us this is not the appropriate vehicle to determine the ownership of this property. And so once they said this is not the appropriate vehicle, you must use 2467 as the sole exemption to the penal law statute. That's what we did. Let me make one other point about what the Circuit Court understood so that you can concur with us that everyone has appropriately understood the mandate. The mandate is best kind of fleshed out by the language of the Circuit Court opinion on page 25 when they say we would like to send this back and we will give Brazil a reasonable time to seek 2467 action. They then cite a case, INRAE $12 million. That case, and because what they say is Brazil knows perfectly well how to do this because they've done it before, citation 903 F sub 2nd, I think it's page 19. And that case, Brazil sought a restraining order under D3. That case, just like this case, did not have a final enforceable order. It was still under appeal in the Brazilian court. And so when the Second Circuit cites to it and says, look, Brazil knows what it can do. You know, let's set up a reasonable time. They cite to a case in which Brazil has sought a restraining order, not a final enforcement. And so when it goes back to the district court in the Southern District of New York, that's precisely what that court decided was contemplated by the court's mandate. We concurred. When the case was then transferred ultimately to the District of DC, the judge was asked once again, no, shouldn't we be required to provide a final judgment? The answer is we're not in charge of the Brazilian court docket. And so coming up with a reasonable time for the Brazilian courts to resolve what they is appropriately found guilty is not something that is going to click along with the district court's calendar in the District of DC. And so they said, we want you to file a restraining order. We did that. We had the restraining order. And then we had an obligation every six months to advise them of any developments. We do this in virtually all 2467 cases. And we await the conclusion of due process being provided in the court from which the request came. And so we have followed this. I think that the issue of what did everyone understand is best filled in by looking at what the circuit court said, which was we know this is still subject to appeal. And we also know that Brazil knows how to protect itself, citing a case in which we've sought a restraining order. So we simply don't see the defendant's argument being, I mean, the movement's argument being supported by the record. If, and I believe that there is no basis for this, but if you were to determine that the mandate had been misunderstood, the solution isn't to strike Brazil's order and grant this or grant that. The solution is to send it back with a mandate to the district court saying, all right, you understood it meant come up with a reasonable schedule in order to accomplish a restraining order. What we really want is to come up with a reasonable schedule to accomplish enforcement of a final non-appealable done order. No one would have picked November 3rd of 2014 as the appropriate day for that. Everyone was operating under the assumption, or at least the court was operating under the assumption that the circuit court wanted a restraining order in a reasonable period of time, not a final order, not an enforceable order in a reasonable period of time. If you conclude otherwise, which I think is not supported by the record, but if you do conclude otherwise, the solution is to clarify the mandate and say, come up with a schedule for the final enforceable order. I'm happy to answer any other questions. I understand this isn't directly before us, but what we have open on remand is basically competing claims on a pool of funds in this Venus bank account. What is the argument under which Brazil might ultimately prevail? Because as I understand it, the competition is between a BVI judgment that was domesticated in 2010 and a Brazilian forfeiture order that was rendered in 2012. I would think the first in time would prevail. No, because the order comes actually in 2004 to seek the seizure of funds. An interim seizure order, not the trial court final judgment. Under the relation back doctrine, which is the law both in the United States and in Brazil, it says that ownership vests the time of the offense, and so that they would be the prior owner. Okay. Unless you have further questions, I sat down with a minute to go. Thank you very much. All right, Mr. Reed. Your Honor, I didn't answer your question well enough, and my colleagues pointed out that at page four and five of the Second Circuit's opinion, they said, we remand this case to the district court with instructions that it afford Brazil and the Attorney General a reasonable period of time to satisfy 2467's exception. I want to focus on that word. To that rule before reaching a final decision in the interplea action. A D3 protective order is not an exception to the penal law. The only exception under 2467 is an actual execution order, which would give somebody a property right. In answer to the question you asked a moment ago, Judge Cassis, the priority of a U.S. judgment in 2010 absolutely controls under U.S. law. What the government in Brazil have tried throughout is to mix and match Brazilian law and U.S. law to the extent that they like the combination of those two laws. There's no way to use relation back of Brazilian law to change U.S. in the first judgment. It's eight years old. The basis on which you came up for mandamus was this interminable delay. Correct. But we now have in the 28J, I think, the Brazilian appellate process has run its course. So even on the government's view of things, it would seem now that the interplea action is right for decision. And the Second Circuit has made clear that all of these issues of whether your judgment prevails or not are still open. So why would we jump in now? What's your irreparable injury now that everything is ready to go? Violation of the mandate has already occurred. So, in essence, what they're asking this Court is a second chance at another reasonable period of time. So if this Court, this Court certainly has the power to determine that a violation of the mandate has occurred and within its all-writs jurisdiction the power to issue any relief necessary. So the Court has the power to say, you Brazil, this is a response to your question a moment ago as well, Brazil itself had the power at any point in time, it was represented by Baker, Hostetler, to file the 2467 D3 application all the way back in 2011. And on that point, we filed a 28J letter. The 28J letter we filed has the legislative history of Tiger Eye and what it was meant was to protect the flight of funds outside of the U.S. to criminals. The funds had already been restrained and were in custodial ledges in a U.S. court. The rationale behind the amendments caused by the Tiger Eye decision out of this Court don't apply and didn't justify the D3 restraint. The money was already before a U.S. court. So they've, I would argue, unfairly and illegally in terms of what the proper use of an interpleader and D3 are, restrained this money for eight years too long and the reality is that we've been entitled to it as a judgment creditor since 2010. So it is certainly within this Court's prerogative to send it back for round five in the district courts. But I would argue that they, Brazil, had their chance and they chose not even to appear and the party arguing for this money right now is still the wrong party. The interpleader plaintiff said in 2010, the U.S. government, you, the U.S. courts, can figure out where this money goes and at every point for eight years until today, they have tried to direct this money to Brazil. So I think the Court has the issues. We would ask that you find a violation of the mandate and put a fork in this one. I have a factual record question. Yes, Your Honor. Did a separate mandate issue from the Second Circuit or is their opinion the sole mandate for the purpose of our consideration? I'm aware of nothing other than the opinion, Your Honor. So we read the opinion as the mandate. But I believe that the Court, this Court has said, and other circuit courts have said, that it is within the mandamus court's power to both interpret and enforce the mandate of prior decisions. In fact, the 1971 Jablonski case out of this court was a case in which this court had said that a certain recusal or disqualification order as to counsel and the basis for it was justified. It overruled the district court and said that this disqualification order should have been granted. They went and hired some other counsel, which obviously wasn't the issue before the D.C. Circuit Court the first time around. Oh, I'm correct? Sorry, Your Honor. There is a mandate. All right, but it's not in your appendix. The mandate. No, I apologize. It doesn't add anything, though. I'm happy to read it into the record. Why don't you read it into the record? I apologize, Your Honor. The appeal in the above-captioned case from an order of the United States District Court for the Southern District of New York was argued on the district court record and the party's briefs. Upon consideration thereof, it is hereby ordered, adjudged, and decreed that the district court's order awarding summary judgment in favor of Brazil is vacated and the case is remanded in accordance with the opinion. All right. Thank you. I apologize for the misstatement. I just remember there was nothing substantive. Thank you for your time. All right.
judges: Wilkins, Katsas, Randolph